On the Merits.
Fenner, J.
By Act No. 49 of 1869, the legislature of the State authorized the City of New Orleans to issue bonds to the amount of five millions of dollars, to be used in exchange for, and in payment of certain then existing indebtedness of the City, evidenced by city notes, judgments, outstanding warrants, etc.
By the Act No. 93 of 1856, in force at the time, the taxing power of the City of New Orleans was limited to one and one-lialf per cent, upon the assessed value of both real and personal property, except as to certain then existing indebtedness.
The Act of 1869 did. not, by any express jiro vision, enlarge the taxing power of the City, or direct or authorize the levy of any special tax for the redemption of either the interest or principal of the bonds.
The only provision made for that purpose, with which we are here concerned, was the following:
“ That to secure the payment of the interest and capital of all the bonds to be issued under this Act, it shall be the duty of the common council of said City, within one month after the passage of this Act, and annually in the month of January thereafter * * * to appropriate a sufficient sum out of the revenues of the current year, to pay the monthly sum of $29,166$,” which sums, it is further provided, shall be. deposited monthly, by the city treasurer, with the fiscal agent, and by him applied exclusively to the semi-annual payment of the interest coupons on said bonds.
The interest on the bonds was regularly paid until 1876, by the levy of an annual tax exceeding one and one-lialf per cent, the taxing limit having been extended to 1.75 per cent, by the legislative Act No. 7 of Extra Session of 1870, and the limitation as to taxes for interest on the bonded debt having been subsequently entirely removed by Act 73 of 1872.
In 1876, tlie Act No. 31, commonly known as the Premium Bond Law, was passed, which restored the one and one-lialf limit on the taxing-power of the City which had existed at the date of the Act of 1869, which authorized the funding of all the bonded indebtedness of the City into Premium Bonds, and required that all of said tax which should be levied for the payment of interest or principal of bonds, *472 should be devoted .to the bonds issued under the funding scheme therein provided.
From the date of the passage of this Act, up to the adoption of the Constitution of 1879, the City authorities^ continued to levy annually a tax of one and one-half per cent, but has devoted the whole of it to City-expenses or alimony, and to the Premium Bonds issued under the Act of 1870, and has not provided for the interest on the bonds of 1869.
An Article of the present Constitution of the State, adopted in 1879, restricted the taxing power of the City to one per cent., but, at the demand of bonded creditors, we held that, if necessary for the performance of their contract, the City was bound to exercise the taxing power which it possessed at the date of said contract, notwithstanding the subsequent restriction. State ex rel. Moore vs. N. O. 32 A.
In conformity to this decision the City, up to this date, has continued to levy annually a tax of one and one-half per cent.
Act 38 of 1879, makes it the duty of tlie council, on or about the 2d Tuesday of December, 1879, and annually thereafter, to propose a detailed statement of receipts and expenditures for tlie ensuing- year, to publish said statement for ten days, and, at their first meeting- after such publication, to adopt said statement or estimate, and to levy a tax to meet the expenditures thus estimated not to exceed the limit prescribed by law; and provides that the estimate thus adopted shall constitute an appropriation for the purposes therein set forth, "and that no money shall be drawn from the treasury except upon such appropriation ; and further provides that appropriations made in said estimate for any particular purpose, “ shall not be diverted from that object by any cause or reason whatsoever * *■ but shall remain and be kept sacred to the object of the appropriation.” t
On the 24th of December, 1830, Relator, holder of bonds issued under the Act of 1869, filed his petition containing all necessary and appropriate averments, and praying for a writ of injunction to restrain the Mayor and Administrators from adopting the budget or estimate without providing therein for payment of the interest on liis"bonds, and also for a writ of mandamus commanding" them to provide and set apart, out of the receipts and revenues of the year 1881, a sum sufficient to pay the semi-annual interest on his bonds falling due on the 1st March and 1st September, 1831, and to place and insert said amount in tlie estimate of liabilities and expenditures of the City for the fiscal year of 1881, according to law, and also to provide for the annual interest on said bonds as it matures for each succeeding year, until full satisfaction of his contract.
The writ of injunction was not allowed, but by an order of the Court dated December 27th, 1880, the alternativ e writ of mandamus was issued, *473 made returnable on January 8, 1881, on which day the City authorities filed their answer or return to the writ, setting up numerous causes why the writ should not be made peremptory, which will hereafter be noticed in the course of this decision.
The Court a qua rendered judgment making the mandamus peremptory, “in so far as to order the Respondents to provide and set apart from the revenues of 1881, the sum of $6,125, to meet and pay the semiannual interest on the bonds held by Relator.”
From this judgment the Respondents alone have appealed, and the Relator has asked no amendment thereof; so that the sole.question before us is to determine whether this particular judgment shall be affirmed, or reversed, or amended to the advantage of the appellants. We have no concern with any different or additional relief to which Relator might be entitled in another, or even in the present proceeding.
Amongst other causes why the mandamus should not be made peremptory, the Respondents returned, in substance, and the evidence establishes, that on the 18th day of December, they had proposed and published their detailed statement of receipts and expenditures, and that on the 29th December, they had ado|)ted said statement, and had levied a tax of one and one-half per cent, which exhausted the power of taxation possessed by them, either under existing law, or under the law which was in force at the time when Relator’s bonds were issued; and that the whole revenues therefrom, together with all other revenues of the City, would be absorbed by the appropriations made in the said budget or detailed statement.
It cannot be denied, that in proposing, publishing and adopting the budget, at the times and in the manner in which these things were done, the Respondents acted in simple obedience to the imperative mandates of the Act 88 of 1879, heretofore referred to. There was nothing in the judicial action had in the Relator’s proceeding, which, in any manner, restrained or controlled their action in the premises, or which could have authorized or excused them for postponing the performance of the said functions bej'ond the times fixed in the law itself, to await the determination of the claim asserted by him and denied by themselves.
In considering whether the judgment appealed from shall be affirmed or reversed, we are immediately confronted with the practical question as to how the peremptory mandamus ordered by said judgment shall be executed.
“ It is a fundamental principle of the law of mandamus,” says Mr. High, “ that the writ will never be granted in cases where, if issued, it would prove unavailing. -And wherever it is apparent to the Court that the object sought is impossible of attainment, either through want *474 of power on the part of the persons against whom it is invoked, or for other sufficient causes, the Court will refuse to interfere.” High’s Extraordinary Rem. § 14, and authorities there cited.
The mandamus orders the Respondents “ to provide and set apart from the revenues of 1881, the sum of $6,125, to meet and pay the semiannual interest to fall due on the bonds hold by Relator,” etc.
It is apparent that it can be executed in only one of two ways, viz :
1st. By taking the amount from the revenues already raised, and the whole of which have already been appropriated to other purposes; or
2d. By levying an additional tax, for the -purpose of raising the additional revenue needed to meet Relator’s demand.
As to the first method: It is not established that there are, or will be, any revenues of 1881 in excess of the appropriations made in the budget.
The law of 1879 is absolute, that appropriations made in the budget for any particular purpose, “ shall not be diverted from that object for any cause or reason whatsoever, * * but shall remain and be kept sacred to the object of the appropriation.” We are at a loss to discover where we are to find authority to compel the Respondents to violate this plain mandate of the law. This Act is no novelty in legislation. A similar provision is found in Section 124 of Act 164 of 1856, in force at the date of Relator’s contract, and his case would not be different if that Act remained in force.
However clear may have been Relator’s right to have had an appropriation made for his demand, and however clear the duty of Respondents to have made it, the fact remains that the appropriation was not made. This fact alone would not, perhaps, have been sufficient to defeat his right by mandamus, to compel the city authorities to do, out of season, that which, after proper demand a.nd putting in default, they had failed to do in season. But it is supplemented by the additional fact, that the entire revenues have been actually appropriated to other purposes, and that the law forbids absolutely the diversion of the revenues from those purposes.
Supposing, for the sake of argument, that Relator should have the right, in some legal proceeding, to go behind the law and to assert a preference on the revenues over some/or all of the appropriations, and to claim the. annulment or reduction of some or all of them, in order that his claim might be paid — could such a right bo asserted in a mandamus proceeding ? An infinite number of objections to such an idea immediately suggest themselves, chief amongst which is the fact that third persons have acquired rights and claims in and upon the several *475 appropriations, of which they cannot be divested in a mandamus proceeding to which they are not parties.
Mr. High only enunciates a self-evident proposition when he says that courts will refuse to interfere hy mandamus, " especially when it is apparent that the interests of third parties, not before the court, are involved.” High on Ex. Rem. § 39.
How should Respondents execute the mandamus herein, if maintained 9 What appropriation shall they annul or reduce, in order to provide for Relator’s demand 9 The mandamus does not specify. Suplióse they should decide, for example, to provide for it out of the appropriation made for the payment of "judgments.” Would not the judgment creditors entitled to the benefit of that appropriation have the right to enjoin them from so doing 9 If, on the other hand, they should determine to reduce all the appropriations rateably, that would only expose them to the same assaults by a multitude, instead of by a few interested parties. If it be said that they may provide for it out of appropriations for city expenses, the reply is, first, that they are not ordered so to do; and, under the law, appropriations for these purposes are as inviolable as any others; secondly, that, no doubt, upon these funds as well as others, employees have acquired rights; thirdly, that these appropriations may be essential to the alimony or support of the City.
We are not to be influenced by the fact, that the provision sought to be enforced here is for only $6,000. It might as well have been for $600,000, the allowance of which might completely paralyze the functions of the City government.
We are not concerned, here, with the question of the inadequacy of other legal remedies for the enforcement of Relator’s rights. That is a reason for the exercise of the remedy of mandamus, when that remedy is otherwise adequate and appropriate. But we hold that, in such a matter as that now under discussion, mandamus is not, under any circumstances, an adequate, appropriate, or even legal remedy, and we wish it distinctly understood that we decide nothing else.
II.
Can the mandamus be executed by levying an additional tax for the purpose of providing for Relator’s demand 9
We are dispensed from the discussion of the question of power or duty on the part of the Respondents to levy any tax beyond that already levied, by the following distinct admissions in the brief of Relator’s counsel, which are sustained by the record, and which we quote:
*476 “ Relator does not ask the levy of any tax, either directly or indirectly, nor does he claim that the levy of a taxis required and necessary to satisfy his demand. Not a word can he found in his petition or its prayer to the offect that ho asks, either directly or indirectly, the levy of any tax whatever, as a condition of the City’s contract with him.”
In presence of the limitation imposed by ArticleJJOh of the Constitution, it is clear that the City authorities have no right, of their own motion, to exceed that limitation.
Tho question whether the limitation can be enforced against the rights of contract creditors is a judicial question. When such a question has been once determined by tho Courts in favor of a particular class of contract creditors, thoy must obey the judicial mandate, and respect thereafter the rights of such creditors. But, in absence of such judiciul determination, they have no power to exceed the limit imposed upon them by the Constitution.
It being conceded that tho mandamus herein, does not compel or require them to levy a tax in excess of that already levied by them, which exceeds the Constitutional limitation, they have no right to do so, and there is an end of this question in the present case.
It is, therefore, ordered, adjudged and decreed, that the judgment appealed from ho reversed, that the Relator’s demand he rejeetod, that the alternative writ of mandamus issued herein be dissolved, and the peremptory writ denied, at Relator’s costs in both Courts.